**WYOMING BANCORPORATION, Appellant (Plaintiff and Appellant below),**

v.

**Dwight BONHAM, Wyoming State Bank Examiner, and Wyoming Security Bank, Sheridan, Wyoming, a Wyoming Corporation, and its organizers and proposed officers and directors in their official capacity, Appellees (Defendants and Appellees below).**

No. 4589.

Supreme Court of Wyoming.

May 10, 1977.

Rehearing Denied June 14, 1977.
See 566 P.2d 219.

Jack B. Speight, Hathaway, Speight & Kunz, Cheyenne, and Jack R. Gage, Hanes,

Carmichael, Gage & Speight, P. C., Cheyenne, for appellant.

Henry A. Burgess, Burgess & Davis, Sheridan, and Richard L. Eason, of Simon, Eason, Hoyt & Malone, P. C., Englewood, Colo., for appellees.

Before GUTHRIE, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge, retired.

ARMSTRONG, District Judge, retired.

This matter has previously been before this court on appeal from the decision of the District Court of Laramie County, Wyoming which affirmed the order of the State Examiner authorizing the issuance of a state bank charter to Wyoming Security Bank of Sheridan, Wyoming. We affirmed the district court's decision. *Wyoming Bancorporation v. Bonham*, Wyo., 527 P.2d 432, rehearing denied, 527 P.2d at 445 (Wyo. 1974). We are now asked to consider the propriety of a judgment for damages occasioned by a stay order entered during that appeal.

Bancorporation had moved the district court for entry of an order staying issuance of the state bank charter to Security pending the appeal. On December 27, 1973 the district court orally granted the stay and after hearing evidence pertinent to damages due to a delay in the issuance of the charter fixed a supersedeas bond at $100,000 to be posted in the form of a cashier's check. Bancorporation not yet having filed the $100,000 bond, and at Bancorporation's request, the district court granted a withdrawal of the stay order on February 27, 1974.

On March 11, 1974 Bancorporation moved this court for an order staying enforcement of, and an injunction to stay, the State Examiner's order. On April 23, 1974, pursuant to Art. 5, § 3 of the Wyoming Constitution and Rules 62(e), 72.1 and 73(d) and (e), W.R.C.P. this court ordered a stay, pending Bancorporation's appeal, subject to the posting of a $100,000 cashier's check by Bancorporation. On April 25, 1974 Bancorporation filed a "Conditional Bond and Partial Waiver of Stay of Enforcement" which was not in compliance with this court's April 23, 1974 order. On May 9, 1974 Bancorporation was ordered to file proper bond—the $100,000 cashier's check to remain as security for the bond without necessity of corporate or other surety—and it did so on May 13, 1974.

On August 1, 1974 Bancorporation opened its own banking establishment in Sheridan, Wyoming as a national bank, being the third bank in Sheridan and the fourth bank in Sheridan County.

On October 16, 1974 this court entered its decision affirming the district court's order, *Wyoming Bancorporation v. Bonham*, supra.

On November 6, 1974 Security received its charter from the State Examiner and commenced its banking business as the fourth bank in Sheridan and the fifth bank in Sheridan County.

In the mandate of affirmance to the district court filed December 18, 1974, this court ordered that all proceedings in connection with the previously entered stay of execution and bond be returned to the district court for such other proceedings as may arise in connection with any claim for damages. Pursuant to this mandate, Security moved the district court for an award of damages resulting from the stay in the amount of $189,269. After a hearing on the issue of damages and a request for submission of findings of fact and conclusions of law, the district court on June 11, 1975 entered judgment against Bancorporation and in favor of Security in the amount of $162,488.96, together with Security's costs incurred therein. It is the propriety of this judgment which is now before this court for consideration.

Appellant herein asserts seven bases for reversal of the district court's judgment:

> I. THE EVIDENCE DOES NOT SUPPORT THE JUDGMENT.
>
> A. THE DISTRICT COURT RELIED UPON EVIDENCE PRESENTED EX PARTE AFTER THE RECORD WAS CLOSED.

B. THE DAMAGES AWARDED FOR LOSS OF FUTURE PROFITS WERE NOT SUPPORTED BY PROPER EVIDENCE.

C. SECURITY'S PROOF OF DAMAGES FOR LOSS OF FUTURE PROFITS DOES NOT MEET REQUISITE LEGAL STANDARDS.

II. THE TRIAL COURT'S AWARD FOR DAMAGES WHICH ACCRUED PRIOR TO THE OPENING OF SECURITY'S BANK IS IMPROPER.

III. SECURITY FAILED TO PROPERLY MITIGATE DAMAGES.

IV. THE TRIAL COURT IMPROPERLY CONSIDERED COMPETITION BETWEEN THE THIRD AND FOURTH BANKS.

V. SECURITY'S DAMAGES MUST BE LIMITED TO $100,000, INCLUDING INTEREST AND COSTS.

VI. THERE WAS AN IMPROPER LACK OF COMPLIANCE WITH THE CIVIL RULES.

VII. THE LARAMIE COUNTY DISTRICT COURT DID NOT HAVE JURISDICTION TO CONSIDER DAMAGES ON REMAND.

### I. and II.

*The evidence does not support the judgment; and the trial court's award for damages which accrued prior to the opening of security's bank is improper.*

▪ Appellant asserts that the district court improperly relied on ex parte evidence presented after the record was closed. Reference is made to a letter tendered with appellee's proposed findings of fact and conclusions of law. Attached to the letter were alternative calculations of appellee's damages. We can find nothing inappropriate about this communication. It was merely in response to the district court's invitation to submit proposed findings of fact, and the alternative calculations contained therein are fully supported by substantial evidence taken at the hearing.

Appellant seeks to buttress part of its first contention by reference to dicta contained in *Diefenderfer v. Totman*, 73 Wyo. 409, 280 P.2d 284 (1955), wherein we cited with approval 25 C.J.S. Damages § 42b.

▪ Since then the text writers have modified the lost-profits rule as it relates to new businesses, as follows:

"Where a new business or enterprise is floated and damages by way of profit are claimed with respect thereto, as for its interruption or prevention, they will generally be denied, for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation. The same principle applies to a business which is not yet established, but is merely in contemplation. *On the other hand, lost profits will not be denied merely because a business is new if factual data are available to furnish a basis for computation of probable loss of profits.*" (Emphasis added) 25 C.J.S. Damages § 42b).

We find the last-mentioned portion of the rule properly emphasizes the calculation of lost profits with reasonable certainty, rather than relying on the classification of the business in question as new or established. See *S. Jon Kreedman & Co. v. Meyers Bros. Parking—Western Corp.*, 58 Cal.App.3d 173, 130 Cal.Rptr. 41 (1976); *Vickers v. Wichita State University, Wichita*, 213 Kan. 614, 518 P.2d 512 (1974), and *Smith Development Corporation v. Bilow Enterprises, Inc.*, 112 R.I. 203, 308 A.2d 477 (1973). The evidence necessary to establish lost future profits with reasonable certainty depends, then, upon the circumstances of the particular case. Notes: *Requirements of Certainty of Proof of Lost Profits*, 64 Harv.L.Rev. 317, 319 (1950). A court should approach each case in an individual manner and require the claimant to furnish the best proof available as to amount of loss. *Vickers v. Wichita State University, Wichita*, supra, 518 P.2d at 517; and McCormick, Law of Damages, § 29 (1935). Absolute certainty in proving loss of future profits is not re-

quired. *Smith Development Corporation v. Bilow Enterprises, Inc.*, supra; and 22 Am. Jur.2d Damages, § 172.

> "Thus as we see it a sharp line of distinction should not be drawn between old and new businesses, but recourse should be had in both situations to the basic question whether a prospective loss of net profits has been shown with reasonable certainty. See Am.Law Inst., Restatement, Contracts, Sec. 221(1) and Comment d., illustration 6, thereunder." *Standard Machinery Co. v. Duncan Shaw Corp.*, 208 F.2d 61, 64 (1st Cir. 1953).

With respect to appellee's evidence of lost future profits, it is sufficient to note that Security's experts, Dean C. Coddington and Eugene K. Ogier, concluded, based on bank feasibility studies and projected deposits, that Security would lose $167,200 in income over a ten-year period, having a present value of $114,910.

 Appellant asserts that Security's proof was based on certain improper assumptions dealing with loan demand, time money to demand money ratios, loan and time money interest rates, and lost deposits due to delay. Appellant presented its expert, Nelson E. Tamplin, to explain its view of these assumptions. The district court could have believed Tamplin's version of profitability; it chose not to do so. The correctness of these assumptions was obviously a fact question resolved against appellant by the district court. The use of projected deposit and loss figures is not in itself objectionable, and is permissible in determining the lost profits occasioned by a delay in starting up a banking business. Appellee presented factual data of its losses which were acceptable as bases for calculating its probable losses resulting from the five months' delay occasioned by the stay of execution.

In view of our decision, regarding the effect of the $100,000 bond on these proceedings, it is unnecessary to reach the remaining damage questions raised by appellant.

## III.

*Security failed to properly mitigate damages.*

 With respect to appellant's third assignment of error, it is well established that one who is injured by the wrongful act of another must exercise reasonable care and diligence to avoid loss or to minimize the resulting damage. See *Thayer v. Smith*, 357 P.2d 1115, 1119 (Wyo.1960). The question, however, as to whether such reasonable care and diligence was exercised is clearly one of fact for the trier of fact, within its considerable discretion. *Thayer v. Smith*, 380 P.2d 852 (Wyo.1963), and *Asbell Bros., Inc. v. Nash-Davis Machinery Company*, 382 P.2d 57 (Wyo.1963). We are unable to hold as a matter of law, based on a reading of the entire record, that Security failed to mitigate its damages. The district court was entitled to believe Security's evidence that it exercised reasonable care and diligence to minimize its damages.

## IV.

*The trial court improperly considered competition between the third and fourth banks.*

Appellant also argues that the district court improperly considered competition between appellant and appellee as the third and fourth banks in Sheridan. In this respect, appellant relies on our previous decision in this matter, wherein we held that:

> "In our view the competition as between these two banks was never properly posed to the examiner and we cannot now consider or order him to consider it." *Wyoming Bancorporation v. Bonham*, supra, 527 P.2d at 439.

While the competition between the two banks could not properly be considered in the context of that appeal, their relative times of entrance into the Sheridan banking market were certainly important in assessing the damages occasioned by the stay order. As a result, the district court properly considered this factor as it affected the damages issue.

## V.

*Security's damages must be limited to $100,000, including interest and costs.*

Appellant's fifth contention requires our scrutiny, in that it considerably lessens the damages recoverable by Security. In one conclusion of law in the April 23, 1974 order to stay enforcement of the State Examiner's order, this court said:

"This court has jurisdiction and power, under the provisions of Article V, § 3 of the Wyoming Constitution and Rules 62(e), 72.1, and 73(d) and (e) of the Wyoming Rules of Civil Procedure to enter order for stay of all proceedings * * * pending disposition of this appeal * *."

Rule 62(e), W.R.C.P. reads:

"The provisions of this rule do not limit any power of the supreme court or of a justice thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered."

Rule 72.1(e) reads:

"Filing of the petition [for judicial review of administrative order] does not itself stay enforcement of the agency decision. The reviewing court may order a stay upon appropriate terms. If the stay involves an order preventing an agency or another party from committing or continuing an act or course of action, the provisions of Rule 65 relating to injunctions shall apply."

Rule 65, Injunctions, section (c) reads:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party

who is found to have been wrongfully enjoined or restrained. * * * The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule."

In pertinent part, Rule 73(d)(1), W.R.C.P.[1] provides that:

"The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is not perfected or is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the supreme court may adjudge and award."

Rule 73(e), W.R.C.P. provides that:

"If a bond on appeal or a supersedeas bond is not filed within the time specified, or if the bond filed is found insufficient, and if the action is not yet docketed with the supreme court, a bond may be filed at such time before the action is so docketed as may be fixed by the district court. After the action is so docketed, application for leave to file a bond may be made only in the supreme court."

Considered together, the foregoing rules provide this court with the necessary guidelines for establishing the boundaries of a supersedeas bond.

Reference is first made to our decision in *Weber v. Johnston Fuel Liners, Inc.*, 540 P.2d 535 (Wyo.1975), wherein we held that

"When the action or proceeding is upon the bond issued in an injunction case, the almost universal rule is that nothing in excess of the face of the bond is recoverable by way of damages * * * [cases cited]."

The question arises as to whether this rule is equally applicable to actions upon a supersedeas bond without surety.[2] In the factual situation involved in this appeal, the administrative action of the State Examin-

---

1. In federal practice this rule and Rule 65.1, W.R.C.P. (sureties on bonds) have been superseded since 1968 by Rule 8, Rules of Appellate Procedure. 11 Fed.Prac. & Proc. 327, § 2905, and see § 2971.

2. There is no indication whether the injunction bond at issue in *Weber v. Johnston Fuel Liners, Inc.*, supra, was with or without surety.

er in granting a charter to Security Bank had been stayed pending appeal. The pertinent rules are quoted above.

It should be said again that this court in its mandate of affirmance of the main case "* * * FURTHER ORDERED that the bond or security filed herein by Wyoming Bancorporation to secure a stay of the proceedings in this court shall remain in full force and effect to satisfy and secure any recovery for damages suffered by the Wyoming Security Bank * * * and that the bond and all proceedings in connection therewith shall be returned to the district court for such other and further proceedings as may arise herein in connection with any claim for damages; and that the cashier's check * * * be retained by said clerk to be held to answer and satisfy any judgment * *."

Approximately six weeks later the appellee here moved the district court for an award of damages. In support of its motion Wyoming Security Bank filed a memorandum addressing

"* * * primarily the issue of the availability of summary proceedings against Wyoming Bancorporation to enforce liability on the supersedeas bond which was required to be posted as a condition of staying the Wyoming State Bank Examiner's Order granting a banking charter to Wyoming Security Bank. * * *"

The memorandum relied heavily on Rule 65.1 W.R.C.P. wherein it is provided that "liability may be enforced on motion without the necessity of an independent action." It quotes liberally from Moore on Federal Rules and Practice, Vol. 7, Sec. 65.1 then continues:

"It is important at this point to emphasize the reference of the Wyoming Supreme Court in its order of April 23rd that it was requiring a bond because the Wyoming Security Bank had *no legally compensable right to recover damages which would result from a stay otherwise.* * * * Hence, a type of contractual

right was vested in Wyoming Security Bank to recover its damages and costs * * *."

The memo cites *Philbrick v. Tadder*, 196 Okl. 218, 164 P.2d 226 (1945) in which it is said:

"* * * An action to recover for a breach of a bond given to stay a judgment of a court pending an appeal to the Supreme Court is an action on the contract and the judgment obligors are bound by the terms and conditions of the bond. * * *" [Citing cases]

The point is well taken that the proceedings in this case as initiated by Wyoming Security Bank by motion to enforce the bond obligation is founded in contract. In that respect, of course, it differs from an independent action where the damages sought sound in tort. For example, liability at common law for damages resulting from an injunction erroneously granted was denied unless the case was one of malicious prosecution. *United Construction Workers v. Canfield Co.*, 19 Conn.Sup. 450, 116 A.2d 916, 917 (1955), *Steller v. Thomas*, 232 Minn. 275, 45 N.W.2d 537 (1950); *Jordan-Jefferson Ins. v. Scheer*, 16 Wis.2d 288, 114 N.W.2d 408 (1962).

In the Connecticut case cited above a bond "to answer all damages accruing by reason of the issuance of said temporary injunction and said failure to prosecute said action to effect" was construed to be a penal bond and the recovery in the action on the contract was limited to the amount of the bond.

Here the obligation under the contract was limited by its terms as stated in the conclusion quoted above

"* * * that a bond in the amount of $100,000.00 is reasonably necessary to protect the appellees herein from loss resulting from such stay * * *".

Again, the court is mindful that the main case was a review of an administrative action and that Rule 72.1(e) W.R.C.P. provides, in such case, if a stay is granted the

provisions of Rule 65 W.R.C.P. shall apply. In turn, Rule 65 provides for

"* * * the giving of security by the applicant, *in such sum as the court deems proper,* for the payment of such costs and damages as may be incurred * * *." (Emphasis added)

This court deemed $100,000 proper for the purposes and the appellees acquiesced and did not pursue their right to seek an increased undertaking. Rules 62(e) and 73(e) W.R.C.P.

In this particular case the objective is precisely the same whether it is accomplished by an injunction bond or supersedeas bond. Both enjoin a course of action of a party, and both require indemnifying bonds—unlike a stay order which is directed toward further action by a court. Either type of bond gives the enjoined party security against loss if its course of action turns out to have been acceptable but was delayed by the injunction or supersedeas stay. On the other hand, courts need recourse to procedures which will maintain litigated issues in status quo pending decision so that the subsequent judgment will be effective. Rules 62(e) and 73(d), W.R.C.P.; *Taylor Ditch Co. v. Carey,* 520 P.2d 218, 229–230 (Wyo.1974).

■ An exception to the general rule quoted above in *Weber v. Johnston Fuel Liners, Inc.* exists when the wording of the bond or applicable statute indicates an intention to extend liability on the bond beyond the maximum sum stated therein. 12 Am.Jur.2d Bonds, § 47; *Travelers Indemnity Co. v. Askew,* 280 So.2d 469, 471 (Fla. App.1973) (This was a suit on a penalty bond; there are many cases which limit the recovery to the penalty amount of such a bond.); *United Mail Order v. Montgomery Ward,* 9 Ill.2d 101, 137 N.E.2d 47 (Ill.1956), cert. denied, 352 U.S. 1002, 77 S.Ct. 558, 1 L.Ed.2d 546. Some courts have held that while a surety's liability is limited to the amount fixed in an injunction bond, a principal's liability is not so limited. *Miller Surfacing Co. v. Bridgers,* 269 S.W. 838, 840 (Tex.Civ.App.1924). It is well established that a surety cannot be held liable for an amount in excess of the amount of injunctive or supersedeas bonds. 5B C.J.S. Appeal and Error § 2064; 11 C.J.S. Bonds § 132; 83 C.J.S. Supersedeas § 10; 90 C.J.S. Undertakings § 11; 12 Am.Jur.2d Bonds, § 45; and 87 A.L.R. 257.

This court's stay order of April 23, 1974 provided that posting of a $100,000 cashier's check by appellant was "conditioned for the payment of all costs and damages suffered by reason of such stay if for any reason the appeal is dismissed or if the judgment is affirmed." Our conclusion of law set forth in that order further stated that:

"Should it ultimately be determined that the issuance of the state bank charter to Wyoming Security Bank was proper the issuance of such stay and the resulting delay in the activation of the bank will result in consequential damages to the Wyoming Security Bank and its organizers, not legally compensable except as provision shall be made therefor through the requirement of a bond conditioned for the payment of such damages as shall result from such delay during the period that such stay order shall be in effect. The trial court's determination that a bond in the amount of $100,000.00 is reasonably necessary to protect the appellees herein from loss resulting from such stay is reasonable and we see no reason to depart from that sum."

Neither our order of April 23, 1974 nor the relevant rules indicate an intent to extend liability beyond the face amount of the bond. We can find no good reason why the rule limiting sureties' liability should not be equally applicable to principals without surety, as in the case at bar. Appellant's liability results not only from the unsuccessful prosecution of an appeal, but from the fact that an order appealed from was superseded, and because in such an instance our rules require the appellant to post a good and sufficient bond. As a result, the face amount of the bond marks the limit of liability of the appellant as principal. This is not to say that, if the facts warrant, an independent action for tort damages could not be instituted against Wyoming Bancor-

poration. As said in *Johnson v. James H. Price and Co.*, 235 So.2d 763 (Fla.App.1970):

> "If the appellants [Security] have a valid tort claim against Price [Bancorporation], they should not be prevented from filing it in an independent action."

The court is not called upon to consider that theorem since Security brought its present suit on contract for damages secured by the bond. (The dissenting opinion in the above Florida case reviews and outlines several reasons for limiting the principal's liability.)

In a suit involving a wrongful termination of a war contract, the recovery on the injunction bond was limited to the amount of the bond. *Monolith Portland Midwest Company v. Reconstruction Finance Corporation*, 128 F.Supp. 824, 877 (S.D.Cal.1955).

Where $50,000 was posted as a bond, without sureties, for a preliminary injunction under Rule 65(c), F.R.C.P., and $25,000 was posted later for a permanent injunction, both of which were found to have been erroneously issued, the court held, in *Atomic Oil Co. v. Bardahl Oil Co.*, 419 F.2d 1097 (10th Cir. 1970), that the enjoined party, in an independent action, could recover the face value of both bonds even though the damages "were substantially greater than the aggregate amount of the injunction bonds." In its opinion, 419 F.2d at 1101, the court said that an independent action as well as by motion in the main action is proper.

Where an injunction erroneously prevented the opening of a branch bank, authorized by the comptroller of currency, the amount of the bond limited the amount of recovery. *First Citizens Bank v. Comptroller*, 432 F.2d 481, 484 (4th Cir. 1970) (cases cited).

In an injunction suit under the Sherman Act where plaintiffs before obtaining a temporary injunction were required to give bonds covering costs and damages that might be incurred because of wrongful issuance and also pending appeal were required to execute a bond covering expenses and attorneys fees, it was held, in *International Ladies Garment Workers Union v. Donnelly Garment Co.*, 147 F.2d 246, 253 (8th Cir. 1945), cert. denied, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972, that "defendants could not recover on any bond an amount in excess of the penalty of the bond nor for any liability except that stipulated in the bond." (The holding in *Donnelly* was criticized in *U.S. Steel Corp. v. United Mine Workers of America*, 456 F.2d 483, 489 et seq. (3rd Cir. 1972).)

In the present case, appellant did not execute or file a formal undertaking. It chose to file what it denominates as a "Declaration of Compliance". That document says in part: "to obtain the Stay, Wyoming Bancorporation will comply completely with the Orders of this Court dated April 23, 1974, and May 9, 1974." Those orders have been quoted in part in this opinion.

To comply completely, the Bancorporation deposited a cashier's check for $100,000 with the Clerk of Court. In effect the Bancorporation became its own surety by that deposit.

Hence, as indicated above, appellees could and did proceed by motion as provided in Rule 65.1 W.R.C.P. without an independent action, but they did have that choice. They chose the motion procedure which confined their damages to the "contract" which provided the limit of the amount recoverable in that mode of proceeding to $100,000.

This limitation of appellant's liability does not operate to prejudice an appellee who is diligent in seeking an adequate bond. *Venegas v. United Farm Workers Union*, 15 Wash.App. 858, 552 P.2d 210 (1976); and *Johnson v. James H. Price & Co.*, supra, 235 So.2d at 768. If the appellee herein felt the $100,000 bond was insufficient it had recourse for a modification of the bond through Rules 62(e) and 73(e), W.R.C.P. The chosen face amount of a bond may be taken as evidence of a fair valuation of appellee's expected loss. *Fidelity & Deposit Co. of Maryland v. Helvering*, 72 U.S.App. D.C. 120, 112 F.2d 205 (1940). Appellee, however, never objected to the amount of the bond posted herein. If the appellee had

done so at the appropriate time, the appellant would then have had the choice to post a higher bond, or to accede to the termination of his supersedeas in the event he was unwilling to obligate himself to the greater liability. Appellant's liability is, therefore, limited to $100,000.

## VI.

*There was an improper lack of compliance with the civil rules.*

Appellant claims it was prejudiced by the district court's denial of its motions for pretrial discovery, for a pretrial conference and for a trial by jury. It also claims error occurred when the district court struck its counterclaim for damages. In discussing the jurisdictional question raised herein, we held that a principal, with or without surety, was subject to a determination of liability in accordance with Rules 73(f) and 65.1, W.R.C.P. These rules set forth a motion procedure for the determination of liability, although an independent action is permissible. When the motion or summary procedure is utilized, there is no right of jury trial on the issues presented. *Pease v. Rathbun-Jones Eng. Co.*, 243 U.S. 273, 37 S.Ct. 283, 61 L.Ed. 715 (1917); and 7 Moore's Federal Practice, § 65.1.02. Such a proceeding assessing damages is ancillary to the main action and is determined as a part of it without a right to a jury trial. *Alabama Mills v. Mitchell*, 159 F.Supp. 637, 639 (D.C.1958). As a result, no error was committed by denying appellant's demand for a trial by jury. Likewise no error was committed by the district court in striking appellant's counterclaim, since the damages sought therein did not arise out of the delay occasioned by this court's stay order.

When any party to an action requests a pretrial conference, Rule 16, W.R.C.P. requires that such a conference be arranged. The district court erred, therefore, in refusing to grant appellant's request for a pretrial conference. Absent a showing of prejudice, however, such a denial is not reversible error. See *School District No. 9 v. District Boundary Board in and for Fremont County*, 351 P.2d 106 (Wyo.1960). Although appellant argues that it was so prejudiced, a reading of the entire record indicates that appellant was not surprised by appellee's evidence and argument. Likewise, appellant was not prejudiced by the district court's denial of a continuance aimed at pretrial discovery of the substance of expert testimony. Appellee's expert witnesses merely presented variations on the original economic feasibility study prepared for appellee's application for a state bank charter. Appellant's prior involvement with this study hardly indicates the prejudice requisite for a finding of reversible error.

## VII.

*The Laramie County District Court did not have jurisdiction to consider damages on remand.*

Finally, appellant asserts that the district court had no jurisdiction over appellee's damage claims, and that it failed to comply with the rules of civil procedure. At the outset, it should be observed that there is no question here that the district court had jurisdiction in the original administrative appeal from the State Examiner's order. See *Snell v. Ruppert*, 541 P.2d 1042 (Wyo.1975). Rather the question of jurisdiction raised herein relates to the ability of a district court to assess damages on a supersedeas bond after an unsuccessful appeal. Where sureties are involved in such a situation, Rules 73(f) and 65.1, W.R.C.P. clearly provide for the enforcement of liability by motion rather than by independent action.[3] It would be illogical to conclude that a principal, with or without surety,

---

**3.** It should be noted that Rule 65.1, W.R.C.P. does not preclude an independent action against a principal or surety. The rule serves two purposes: (1) It gives a court jurisdiction over a surety; and (2) It establishes a permissible motion procedure for determining liability. It is unclear whether an injured party could recover damages, in excess of a posted bond, in an independent action, and that question is not presently before this court.

was not likewise subject to liability upon motion, since a principal is a party to a cause already within the jurisdiction of the court. *Johnson v. James H. Price & Co.*, supra, 235 So.2d at 767; 7 Moore's Federal Practice § 65.1.05. This court in *Taylor Ditch Co., Inc. v. Carey*, 520 P.2d 218, 230 (Wyo.1974) remanded an injunction case to determine the amount of damages sustained during a stay. Furthermore Art. 5, § 3 of the Wyoming Constitution grants this court the power to issue "writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction." See *Farmer's State Bank v. Haun*, 29 Wyo. 322, 213 P. 361 (1923). This provision allowed this court to issue its stay order of April 23, 1974 and now allows us to make that order meaningful.[4] Also, Rules 72.1, 65(e), 62(d),

62(e), 73(d), and 73(e), W.R.C.P. all bear on appellant's objection to jurisdiction. "The extent of damages becomes a matter to be proved in the district court when liability on the supersedeas bond is sought to be enforced after remand from the appellate courts." *John Hancock Mutual Life Ins. Co. v. Hurley*, 151 F.2d 751, 755 (1st Cir. 1945); *Rector v. Mass. Bonding & Ins. Co.*, 89 U.S.App.D.C. 83, 191 F.2d 329, 333 (1951).

As a result of our holding with respect to appellant's liability under the $100,000 bond, the district court's judgment is affirmed in part and reversed in part, and the cause remanded to the district court for the entry of judgment of $100,000, costs to be apportioned between the parties as provided in Rule 72(j), W.R.C.P.

---

4. In cases of original jurisdiction the court does not take evidence but sends the entire proceed- ings back to the district court. Supreme Court Rule 24.